# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

INTERACTIVE FITNESS, INC.,

    Plaintiff,

v.

SOURESH BASU, et al.,

    Defendants.

Case No. 2:09-CV-01145-KJD-RJJ

**ORDER**

    Currently before the Court is Defendants' Sealed Motion to Confirm Arbitration Award (#23). Plaintiff filed a Response in Opposition (#28), to which Defendants filed a Reply (#29). Plaintiff filed an additional Response (#31) which has also been considered by the Court.

**I. Background**

    Plaintiff Interactive Fitness, Inc. ("Interactive Fitness") filed its Complaint (#1) on June 25, 2009, alleging copyright infringement, breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, fraud in the inducement, and seeking preliminary and permanent injunctive relief and damages against Defendants Souresh Basu ("Basu"), Srimoyee LLC ("Srimoyee"), Sanghamitra Basu, M.D., P.C., and Tripod Computer, Pvt. Ltd. ("Tripod").

    This action arises from a Consulting Agreement entered into on April 1, 2008, between Interactive Fitness and Basu. Interactive Fitness is a Nevada corporation existing for the purpose of designing, marketing and selling fitness, exercise, wellness, and nutrition programs using a web-based software application. Interactive Fitness' business plan is to generate a twelve week fitness and nutrition program for clients through a web-based software application that assimilates medical data, and personal preferences and goals from clients, physicians, and healthcare providers. Basu operates a business known as the Sans Pain Clinic in Las Vegas, Nevada, and is the managing

member of Srimoyee, and is both Director and President of Defendant Sanghamitra Basu, P.C. According to the Consulting Agreement, in exchange for a $24,000 monthly consulting fee, Basu was to oversee the development of Interactive Fitness' web-based software, including support services which required the employment of eight individuals to assist in the software development project. On or about April 1, 2008, Interactive Fitness, Basu, and Srimoyee entered into a contract superceding all previous agreements between the parties, and precluding Basu and Srimoyee from developing software for any individual or company that might compete with Interactive Fitness.

Additionally, the express terms of the Consulting Agreement provided that the software developed by Basu and Srimoyee (including copyrights, trademarks, patents, and any other proprietary rights) belong to Interactive Fitness. Interactive Fitness applied for seven (7) federal copyright registrations for the Interactive Fitness animations, and for a federal copyright registration for the Interactive Fitness source codes for its web-based fitness program. Plaintiff's Complaint avers that the Defendants breached the Consulting Agreement, and its related Non-Disclosure Agreement for their own personal gain, by copying, distributing, and making public, Interactive Fitness' proprietary materials. Additionally, the Complaint alleges that although Interactive Fitness has paid Defendants more than $257,000 in developing the product, Defendants are holding additional materials (the source codes to the personal, medical, and objective data input software) for ransom, by threatening to destroy said materials if Defendants are not paid an additional $166,000. Interactive Fitness filed this action, seeking to recover payments totaling approximately $261,800 that it paid to Srimoyee and Basu and for reimbursed expenses.

The parties agreed that Srimoyee and Basu would hire contractors in India to provide the software development, which was arranged through Tripod, Ltd., a consulting firm owned in part and managed by Basu. In March 2009, the Parties agreed that a third-party developer should take over the project. At that time, the parties had been working together for over 18 months, and the project had become much more complicated than originally envisioned. Subsequently, an argument ensued surrounding whether Srimoyee and Basu had provided Interactive Fitness with access to the source

code which had been developed for their website. Said argument led to Plaintiff's filing of the underlying action in this Court, seeking injunctive and other relief.

On June 26, 2009, the Court granted Plaintiff's Motion for Temporary Restraining Order ("TRO") (#2), and on August 5, 2009, held a hearing on Plaintiff's Motion for Preliminary Injunction (#3). At the hearing, the Court extended the TRO and the Parties agreed to work together in attempt to reach an agreed-upon form of Preliminary Injunction. Subsequently, at a Status Conference held on September 22, 2009, the Court stayed the matter, and referred the Parties to binding arbitration pursuant to the underlying Consulting Agreement. (See #18). Plaintiff then filed a Demand for Arbitration of its claims with the American Arbitration Association ("AAA"). Srimoyee and Basu filed Counterclaims seeking to recover the final monthly installments and other expenses owing at the time their services expired under the Consulting Agreement.

Interactive Fitness' Third Amended Arbitration Demand alleged seven claims for relief: (1) Breach of contract against Souresh Basu and Srimoyee; (2) Breach of the covenant of good faith and fair dealing against Souresh Basu and Srimoyee; (3) Fraud in the inducement against Souresh Basu and Srimoyee; (4) lntentional misrepresentation against Souresh Basu, and Srimoyee; (5) Conversion against Souresh Basu and Srimoyee; (6) Alter ego against Basu, and (7) Breach of fiduciary duty against Basu as a Director and Shareholder of Interactive Fitness.[1] Interactive Fitness dismissed its third, fifth, and sixth claims for relief during the evidentiary phase of the arbitration proceedings.

On December 22, 2009, Srimoyee and Basu filed six Counterclaims in the Arbitration proceedings: (1) Breach of contract against Interactive Fitness; (2) Breach of implied covenant of good faith and fair dealing against lnteractive Fitness; (3) Breach of oral contract against Jones and Lanzkowsky ("Counter-defendants"); (4) Breach of implied covenant of good faith and fair dealing

---

[1] According to the Complaint, Interactive Fitness has three shareholders: Michael Jones ("Jones"), who holds 64% of the outstanding shares; Dr. David Lanzkowsky ("Lanzkowsky") who holds 30% of the outstanding shares; and Defendant Basu, who owns 6% of the outstanding shares. (Compl. ¶ 12.) The shareholders were each parties to a "Shareholders Agreement," which contains a clause prohibiting disclosure of Interactive Fitness' proprietary information and trade secrets.

1 against Jones and Lanzkowsky; (5) Fraudulent inducement against Interactive Fitness, Jones and
2 Lanzkowsky; and (6) Abuse of process.  Srimoyee and Basu dismissed their third, fourth, fifth, and
3 sixth Counterclaims before the close of evidence.  (#28 Ex. 1 p. 8.)

4 On December 28, 2010, Defendants Souresh Basu and Srimoyee, LLC, filed a Motion to
5 Confirm Arbitration Award (#23) with this Court.  The parties stipulated to numerous extensions in
6 which to file responsive pleadings, and on March 4, 2011, the Motion to Confirm Arbitration Award
7 became fully briefed before this Court.

8 Defendants' immediate Motion seeks that the Court issue an Order and Judgment confirming
9 the Arbitration Award and unsealing the filings in this action.[2]  Plaintiff and Counter-defendants, in
10 opposition, argue that the Court should deny confirmation of the underlying arbitration award, and
11 moves that the Court enter a judgment vacating, or modifying the award so as to eliminate
12 Lanzkowsky and Jones' personal liability.  Counter-defendants argue that the Arbitrator, the
13 Honorable Alice D. Sullivan (retired) "exceeded her powers and awarded upon a matter not
14 submitted to her."  (#28 at 3.)

15 **Arbitrator's Decision**

16 On October 26, 2010, the arbitrator issued an interim decision, finding Basu and Srimoyee to
17 be the prevailing parties, and holding Interactive Fitness, Lanskowsky, and Jones jointly and
18 severably liable for the amount of unpaid monthly fees, plus reimbursed expenses, legal fees, and
19 compensation of both the arbitrator and the AAA.  (#28 Ex. 2.)  Upon receiving the arbitrator's
20 interim decision, Plaintiff's former counsel sent a letter to the arbitrator stating that the interim award
21 contained a "clerical error" because "no claims remain[ed] . . . against [] Lanzowsky and [] Jones
22 personally."  (#28 at 5.)  In response to Plaintiff's letter, Defendants also submitted a letter to the
23 arbitrator which made various arguments for Jones' and Lanskowsky's individual liability, and cited

---

[2] On June 25, 2009, the Court granted Plaintiff's Motion to Seal Case and Documents.  (See #7.)  Defedants' Immediate Motion seeks that the Court unseal the filings in this action (see #23), and Plaintiff's Response (#28) states that "Plaintiffs do not object to the unsealing of the filings. . . ."  (#28 at 2 n.1.)  Accordingly, the Court hereby grants Defendants' Request to Unseal the filings.

4

to evidence and exhibits which had been presented during the underlying arbitration proceedings. (#28 Ex. 5.)

On December 10, 2010, a final arbitration award was issued which included a section entitled "Alter Ego" in which the arbitrator made a finding of personal liability against Jones and Lanskowski. In its finding of alter ego liability, however, the arbitrator made no citation to the underlying proceedings specifically, but cited a full paragraph of Counterclaimant's letter regarding Jones and Lanskowski's alleged alter ego actions. (#28 Ex 1 at 5–6.) Per the final award, Interactive Fitness, David R. Lanzkowsky, and Michael Jones were ordered to pay the sum of $360,892.10 to Basu and Srimoyee in damages, arbitration expenses, attorney's fees and costs, and prejudgment interest.

Interactive Fitness and Lanzkowsky oppose confirmation of the award by arguing that the arbitrator acted outside of the scope of her authority in finding Lanskowsky and Jones personally liable averring, among other things, that because Defendants dismissed their counterclaims for personal liability before the close of evidence, the question of personal liability was not properly before the arbitrator for adjudication.

**II. Legal Standard**

A district court's review of an arbitration decision is "limited and highly deferential." Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting Sheet Metal Workers' Int' Ass'n v. Madison Indus., Inc., 84 F.3d 1186, 1190 (9th Cir. 1996)). A court may vacate an arbitration award only if the arbitrator['s] conduct violated the Federal Arbitration Act ("FAA"), or if the award is "'completely irrational'" or "'constitutes manifest disregard of the law.'" Coutee v. Barington Capital Group, P.P., at 1132–33 (quoting G.C. & K.B. Invs., Inc. v. Wilson, 326 F.3d 1096, 1105 (9th Cir. 2003)). A federal court may vacate an arbitration award under the FAA where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear pertinent and material evidence or engaged in any other

misbehavior prejudicing a party's rights; or (4) the arbitrators exceeded their powers.  9 U.S.C. § 10; see also, Stolt-Nielson S.A. v. AnimalFeeds International Corp., 130 S.Ct. 1758 (2010).

Among other things, Jones and Lanskowsy aver that the arbitrator exceeded her powers by finding Lanskowsky and Jones personally liable without considering all factors required to pierce the corporate veil, and make a finding of alter ego.

**A. Exceeded Powers**

"It is only when [an] arbitrator strays from interpretation and application of the [arbitration] agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509 (2001) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and enforce a contract, not to make public policy.  Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S.Ct. 1758, 1767 (2010).

The Ninth Circuit has imposed a high standard for a party seeking to have an arbitration award vacated based on the claim that an arbitrator exceeded his power.  "[A]rbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law."  Kyocera Corp. v. Prudential-Bache T. Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003) (internal quotation marks and citations omitted).  "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law."  Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir.1995).  "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it."  Id.  "'As such, mere allegations of error are insufficient.'"  Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (citation omitted).

### III. Discussion

Plaintiffs' assertion that the arbitrator acted beyond the scope of her authority has merit. As stated above, Defendants' arbitration Counterclaim contained six claims for relief, including claims for breach of oral contract, breach of implied covenant of good faith and fair dealing, and fraudulent inducement against both Jones and Lanzkowsky personally, but no claim for alter ego. Though Jones and Lanzkowsky both testified during the arbitration proceedings regarding instances of their personal use of the Interactive Fitness bank account, allegations of undercapitalization, and failure to follow corporate formalities, there is nothing in the record before this Court to demonstrate they were aware of the necessity to defend an alter ego claim.

### A. Alter Ego

There is a general presumption in favor of respecting the corporate entity. See Calvert v. Huckins, 875 F.Supp. 674, 678 (E.D. Cal. 1995). Thus, to successfully plead liability under an alter ego theory, a party must allege facts which would make the recognition of the corporate entity appear to promote an injustice or a sanction of fraud. Monaco v. Liberty Life Assurance Co., 2007 WL 1140460 *4 (citations omitted). "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to a third person." Katzir's Floor and Home Design, Inc. v. M-MLS.com, 394 F.3d 1143 (9th Cir. 2004)(citing Tomaseli v. Transamerica Ins. Co., 25 Cal.R[tr.2d 433 (Cal.App. 1994). Injustice meriting the piercing of the corporate veil is not a general notion of injustice; "rather, it is the injustice that results only when corporate separateness is illusory." Id. Numerous "critical facts" must be present to establish alter ego liability. Id. Among these critical facts, are inadequate capitalization, commingling of assets, and the disregard of corporate formalities. Sole ownership and control by themselves, cannot destroy the separate corporate identity that is the foundation of corporate law. Id. (citing Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003). Rather, "[t]he doctrine of piercing the corporate veil, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." Id. (citing

William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.35, at 671 (Perm.ed., Ev. Vol.1999).

It is evident here that the arbitrator was aware of Jones and Lanskowsky's concerns regarding personal liability, as the Counter-defendants had sent a letter stating as much following the arbitrator's interim decision.  (#28 Ex. 4.)  Rather than addressing said concerns, the arbitration award made a finding of alter ego, by citing verbatim in cut-and-paste fashion, from Counterclaimants' letter in response to Jones and Lanskowsky's correspondence to the arbitrator. Moreover, the award's paragraph-long finding of personal liability is generalized and lacking in "critical facts" necessary for the Court to determine that the Interactive Fitness' corporate veil should have been pierced.  The award states that Interactive Fitness' bank account, allegedly shows "extensive personal use" by Jones and Lanskowsky, for  "tanning, massages, online music purchases, vehicle repairs, clothing," and personal training. (Id.)  Then, without citing any other evidence or testimony from the underlying proceeding (outside of that copied from Counterclaimant's letter), the arbitrator's decision states that  that "Interactive Fitness was not treated as a separate entity," and "that [Jones and Lanskowsky] treated Interactive Fitness and its assets as their own personal account."  (Id.)

Though at first blush this language appears to support the arbitrator's decision, a closer inspection clearly shows that the arbitrator exceeded her authority in making an alter ego finding, as Counter-defendants did not have the opportunity to defend against an alter ego claim.  Specifically, Defendants had no notice that they could be held personally liable.  The Nevada Supreme Court has stated that a "defendant who is subject to [an] alter ego claim [must be] assured a full opportunity of notice, discovery, and an opportunity to be heard before potentially being found liable." Callie v. Bowling, 160 P.3d 878 (Nev. 2007).

Due process "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." Katzir's Floor and

Home Design, Inc. v. M-MLS.com, 394 F.3d 1143 (9th Cir. 2004) (citing Motores De Mexicali v. Superior Court, 331 P.2d 1, 3 (Cal. 1958). "A prior judgment against a corporation "'can be made individually binding on a person associated with the corporation only if the individual to be charged . . . had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.'" Id. (citations omitted).

Counter-defendants buttress their argument, citing Ralph Andrews Productions, Inc. v. Writers Guild of America, West, 938 F.2d 128 (9th Cir. 1991), in which the Ninth Circuit vacated an arbitration award against an individual under 9 U.S.C.A. § 10(a)(4) upon finding that the arbitrator had exceeded his power. In Ralph Andrews Productions, the Court vacated the arbitrator's decision of personal liability against an individual who was the sole officer and shareholder of the two defendant companies involved in the underlying proceeding. Id. The Court held that because the individual was not actually bound by the underlying arbitration agreement, and had "clearly objected to arbitration" prior to, and during the arbitration proceedings, he could not be personally liable under the agreement. Id. Similarly, here, the Court finds that Jones and Lanskowsky had no notice, discovery, or opportunity to be heard regarding alter ego before being found personally liable for Interactive Fitness.

Though both Jones and Lanskowsky testified on their own behalf, and on behalf of Interactive Fitness during the arbitration proceedings, they testified only regarding the contractual issues then pending. They made no attempt to disclaim personal liability until after the interim decision had been rendered because such a finding was not foreseeable.

Additionally, fraud is a necessary element of the alter ego doctrine. (See A. Darino & Sons, Inc. v. Dist. Council of Painters No. 33, 869 F.2d 514, 519 (9th Cir. 1989). Thus, a party pleading alter ego must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). See Shaix-Marasco v. Austin Regional Clinic P.A., 2010 WL 2232804 *6 (W.D. Texas, June 2010). Fraud under Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting [the] fraud." Thus to sufficiently plead fraud a plaintiff must provide "an account of the time, place, and specific

content of the false representations, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, LLP, 476 F.3d 756, 764 (9th Cir. 2007); see also, Morris v. Bank of Nev., 886 P.2d 454, 456 n. 1 (Nev. 1994). Additionally, fraudulent intent must be proven with facts, and may not be inferred solely from a company's "bleak financial condition". Seymour Hull & Moreland Engineering, 605 F.2d 1105 (9th Cir. 1979)

The Court finds nothing in the record demonstrating that the elements of fraud necessary for an alter ego finding were alleged or brought to light in the underlying proceeding. While this finding alone may not be sufficient to overcome the high deference that must be given the decision of the arbitrator, the Court finds that the lack of fraud allegations in the underlying proceeding or award is indicative that the parties did not have the opportunity to fully litigate the issue of alter ego. Accordingly, and for the reasons stated above, the Court finds that the arbitrator acted beyond her jurisdiction in making an alter ego finding, and that her decision shall be set aside as to Counter-defendants Jones and Lanskowsky's personal liability.

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED**, that Defendants' Motion to Confirm Arbitration Award (#23) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Vacate or Modify (#28) is **GRANTED** in part. The arbitration award shall be modified so as to reflect that no personal liability shall be assigned to Counter-defendants Jones and Lanskowsky.

**IT IS FURTHER ORDERED** that this case shall be **UNSEALED**.

DATED this 13th day of May 2011.

_____
Kent J. Dawson
United States District Judge